BELZONI DRAINAGE DIST. *v.* COBB.*

(Division B.  Dec. 22, 1924.)

[102 So. 259.  No. 24547.]

1. DRAINS. *Damages resulting from cleaning out of drains and ditches held required to be claimed on original laying out of district.*

   Where a drainage district is organized under chapter 195, Laws of 1912, and plans and specifications of the canals and drainage are filed and approved and notice given to property owners under the requirements of the statute, and the owner fails to file claim for damages to his property, and the district is created and the drainage canals located, the property owner is thereafter precluded from claiming damages resulting from cleaning out of said drains and ditches, if done in a proper manner, under proper plans, etc., and it is immaterial that his property damaged by such cleaning out of said drains does not lie contiguous to the ditches or canals.

2. Drains. *Rule stated as to right of action of owners for damages caused by ditches· not on original plans and specifications.*

> If new ditches and drains, not on the original plans and specifications, are laid out subsequent to the creation of the district, and the property owners are not given notice and opportunity to be heard on the question of damages, they would have a right of action for damages. But such right of action does not apply to such damages as are within the purview of the original drainage plans and specifications.

---

*Headnotes 1. Drains, 19 C. J., section 196; 2. Drains, 19 C. J., section 199.

Appeal from circuit court of Humphreys county.

Hon. S. F. Davis, Judge.

Action by J. E. Cobb against the Belzoni Drainage District. From an order overruling its demurrer to the declaration, defendant appeals. Reversed, and dismissed.

*Montgomery & Montgomery,* for appellant.

The Belzoni drainage district had the right to use its canals for the purposes for which they were intended, and to properly maintain them when necessary—so long as the maintenance work was performed in a proper and skillful manner. The error complained of can be simply stated. When a drainage district is organized and complies with the drainage statute, giving all of the notices and providing all of the hearings therein contemplated, and finally actually lays out and constructs the proposed improvement—under such circumstances does the drainage district have the right to properly maintain, when necessary, its drainage ditches—provided that the maintenance work is performed in a proper and skillful manner? Or—to state it in other words—after a drainage district has acquired the title to the rights of way for its drainage canals, and has continuously used these canals for more than ten years, can a landowner of the drainage district—after the district has been using

the ditch for more than ten years—come into court and
complain of damages sustained by the necessary and
proper maintenance of a canal, when such necessary
maintenance work has been done in a proper and skillful
manner? Again, the whole controversy may be summed
up in this question: Does the initial assessment of bene-
fits and damages contemplated by the statute cover "all
damages,"—these are the very words of the statute—
and therefore cover not only the damages flowing from
the construction of the canals in the first instance, but
also, all damage flowing from their necessary and proper
maintenance, so long as said maintenance work is per-
formed in a proper and skillful manner?

It is the contention of the appellant that after a drain-
age district acquires title to its drainage canals in ac-
cordance with the provisions of the statute, that the
district thereafter has the right to use the canals for
the purposes for which they were originally acquired by
condemnation, and that the district has the right to
proceed with all necessary maintenance work—pro-
vided same is performed in a proper and skillful man-
ner. It is our contention that any damage flowing proxi-
mately from such work is damage for which the owner is
conclusively presumed to have been compensated in the
first instance, and that all such damage is *damnum
absque injuria,* damage without injury. The statute
creating the drainage district provides expressly for
compensation for all lands taken or damaged by reason
of the proposed improvement. The plaintiff is supposed
to have received full compensation by the invocation of
the rights awarded to him by the statute. If he has not,
then his injury is *damnum absque injuria*—Section 4445,
Hemingway's Code, and section 7 as amended by the
Laws of 1914; Section 4446, Hemingway's Code and sec-
tion 8 as amended by Laws of 1914; *Minyard* v. *Pelucia
Drainage District,* 98 So. 225; Section 4468, Heming-
way's Code, section 22 as amended by Laws of 1914.

"All damages for lands taken or damaged," is bound to embrace not only the damage flowing from the construction of the improvement in the first instance, but such as flow from the necessary and proper maintenance thereof. It is vital that the statute so provide. It would be disastrous for any other construction to be placed upon these provisions. If, after a drainage district has been created and bonds issued for a certain improvement, it is possible for all of the landowners therein to come in with claims for unliquidated damages, then this means that never again will another drainage district ever be created in this state. The costs of drainage are large, and the uncertainties are many—even as things stand. Nevertheless, the advantages of drainage are so great that a very large part of the entire delta portion of this state, as well as considerable parts of other portions of the state, have been literally transformed by drainage districts. The products of the county has been multiplied, and the health of the people vastly promoted. It would be a great step backward if this court should hold that the door is always open for the recovery of judgments upon unliquidated claims against a drainage district for damages growing out of the necessary and proper operation and maintenance of the improvement provided for in the first instance. It would open the door to many rash and adventurous litigants. In the present instance, there are several claims awaiting the outcome of this matter. No one could know whether it was advisable to go into a drainage project. *Moore* v. *Swamp Dredging Co.,* 125 Miss. 842, 88 So. 522; 1 R. C. L., p. 318, par. 5; 1 R. C. L., p. 319, par. 6; *White* v. *Kincaid,* 149 N. C. 415, 63 S. E. 109, 23 L. R. A., (N. S.) 1177; *West Virginia Transportation Co.* v. *Standard Oil Co.,* 50 W. Va. 611, 56 L. R. A. 804; *Ocean Grove Camp Meeting Assn.* v. *Asbury Park,* 40 N. J. Eq. 447, 38 Cyc. 421; *Brown* v. *Beatty,* 34 Miss. 243-44.

We submit that the provisions of section 17 of the Constitution of 1890 have no bearing on the liability *vel*

*non* of the defendant, which liability must still be determined by the common law, as modified by statute. *Brown* v. *Beatty, supra; Jones* v. *Belzoni Drainage District,* 102 Miss. 884, 59 So. 921; *New Orleans etc. Ry. Co.* v. *Brown,* 64 Miss. 479, 1 So. 637.

*Jones & Womack,* for appellee.

The lands of Cobb were not taken for right of way, and were not awarded any compensation for damages, so far as this record discloses, and could not have been in the year 1913, the only time any assessment was made of any damages, because the land was not then damaged, and it could not have then been known that it would ever be taken or damaged. But it was damaged and in the year 1922. Let it be granted, as it was in the trial, that the work upon the canal was necessary, that it was expedient, and that it was done as well and efficiently as it could have been done, still the district or *quasi*-public corporation, has the power, just as the government to take private property, but just as the government, or any subdivision, or any other corporation so empowered, so is imposed the duty to pay for what it gets, takes, or the damage occasioned by such taking or damaging of private property. No statute could be enacted that would abridge the constitutional provision which is as follows: "Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof in a manner to be prescribed by law." 5th Amendment to the Constitution of the United States; *Pumpelly* v. *Green Bay,* 13 Wall 166; *United States* v. *Lynah,* 188 U. S. 445.

We do not think that it ever occurred to the lawmakers that a district should ever, in the cleaning out of its canals, occasion an injury to a landowner, unless it were one who had granted right of way, or who bordered the canal, but the district had all the power, and has all the power necessary to perform this work, and may use lands

of any owner within the district in doing so, but when its operations damage him who has not granted the power, or whose land has not been condemned for its exercise, then such owner is entitled to a fair compensation for such injury. The owners of lands entered upon and taken or damaged by the construction, enlargement, or maintenance of drains, pursuant to the provisions of drainage statutes, are entitled to compensation for such taking or damage. 19 C. J. 703, and cases cited. Drainage authorities are not confined to a single assessment, but if the first is insufficient may have an additional one. 19 C. J. 749; *Simmons* v. *Hopson's Bayou Drainage Dist.,* 112 Miss. 200, 72 So. 901.

Following the reasoning and the authorities, if a new assessment of benefits upon due and proper notice is necessary, then a new assessment of damage is also, necessary upon the prescribed statutory notice, where the assessment is a new one, or the damage is a new one, and not contemplated in the old assessment; the contrary of this principle would be unconstitutional as the taking of private property without process of law. If no proceedings are had by the drainage authorities to assess damages, the landowner, having been given no opportunity to present his claim, may recover his damages in an action at law. 19 C. J. 708; *Copiah County* v. *Lusk,* 24 So. 972. A statute authorizing the taking of private property without compensation is unconstitutional. 19 C. J. 703; *Bradshaw* v. *Shy Island Levee Drainage District,* 201 Ill. 428. The principle of *damnum absque injuria* must yield to a constitutional provision that no private property may be taken without due process of law. 10 R. C. L. 224; *Hickman* v. *City of Kansas,* 120 Mo. 110, 41 Am. St. Rep. 684; *Phillips* v. *Postal Telegraph & Cable Co.,* 130 N. C. 513, 41 S. E. 1022, 89 Am. St. Rep. 868.

We recognize the principle announced by this court in the case of *Moore* v. *Swamp Drainage Co.,* that the owner of the land, by granting the right of way through

his land to the district, and standing by permitted it
to be excavated and established waived by his conduct
and by his acquiescence, and by his grant any damage
that might in the future reasonably or necessarily be
occasioned by a proper repair or maintenance of the ditch
on the right of way, or easement, thus granted, and would
be estopped, if at the time of the grant it was possible
or probable that a damage would flow from the improve-
ment, or could have been reasonably anticipated so that
it might be considered at the time of the taking of the
easement, and the rule could certainly not apply where
a dam was properly constructed upon the right of way,
and where as a consequence not anticipated by the owner,
it effected a flooding of land not taken.   10 R. C. L. 231;
*Madison* v. *Spokane Valley L. & W. Co.*, 40 Wash. 414,
82 Pac. 718, 6 L. R. A. (N. S.) 257; *New York Rubber
Co.* v. *Rothery*, 107 N. Y. 310, 1 Am. St. Rep. 823.

*Montgomery & Montgomery,* in reply for appellant.

The location of lands within the district can make no
difference in the principles of law governing the award
of compensation for damages—the principles of law by
which damages are awarded being the same for all of
the lands within the district.   The location and eleva-
tion of lands are simply facts pertinent to the ascertain-
ment of the *quantum,* or amount, of damages.   *Moore* v.
*Swamp Dredging Co.*, 125 Miss. 842, 88 So. 522.

There is no difference between a voluntary grant made
for certain purposes, and a grant obtained for the same
purposes by virtue of statutory condemnation proceed-
ings.   Condemnation proceedings confer upon a corpo-
ration full power to use property for the purpose for
which it was acquired.   ''It has the right to do all things
with its right of way, within the scope of its charter
powers, which may be found essential or incidental to
its full and complete use for the purpose for which it
was acquired.''   *Canton* v. *Cotton Warehouse Co.*, 84

Miss. 268, 36 So. 266; 65 L. R. A. 561; 105 Am. St. Rep. 428.

We submit that this case stands exactly as though Cobb, the plaintiff, had expressly granted to the Belzoni drainage district the right to construct and maintain the canals in question, and that the condemnation proceedings by which the rights of way in question were acquired, gave the district the right to construct and maintain these canals as against every landowner in the district. *Minyard* v. *Pelucia Drainage District*, 98 So. 225.

Damages contemplated in condemnation proceedings. Replying to the cases cited from the supreme court of the United States, we admit that a landowner is always entitled to damages when lands are taken or damaged for public use. However, we submit that the question here is not whether the plaintiff has sustained damages of the kind and character of which the law takes cognizance, but the question here is whether his right to assert his claim thereto is *res adjudicata*. We submit that when a railroad condemns for railway purposes, the railroad acquires, "the right to do all things with its right of way, within the scope of its charter powers, which may be found essential or incidental to its full and complete use for the purpose for which it was acquired." *Canton* v. *Cotton Warehouse Co., supra.*

The only authority cited by appellee, to which we deem it necessary to reply, is the case of *Bradshaw* v. *Shy Island Levee Drainage District*, 201 Ill. 428. We note that this case is cited in 19 C. J., in note 54, p. 708. We do not happen to have this case in our library, and hence, cannot tell whether the lands damaged were within or without the boundaries of the drainage district. If without, then the case is in conflict with *Indian Creek Drainage District No. 1* v. *Garrott*, 123 Miss. 301, 85 So. 312, and is consequently not an authority in Mississippi. *McGillis* v. *Willis*, 39 Ill. 311 (cited in note 51, p. 707, Vol. 19 C. J.)

Change or alteration of original plan of improvement is not involved here, but such a contingency is amply provided for in the statute.   Section 4444, Hemingway's Code.

Argued orally by *V. B. Montgomery* for appellant, and *H. F. Jones,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee sued the appellant for damages resulting from the overflow of his lands from the drainage system of appellant because of the cleaning out of channels of the canals, or certain of them, which caused the waters thereof to back and impound upon the lands of plaintiff destroying his crops.

There were two counts in the declaration.   The first proceeded upon the theory that the work was done in an improper manner, and that it could have been done in a manner whereby plaintiff's lands would not have been overflowed or damaged.   There was a demurrer to this count of the declaration which was sustained by the court below, and from which no appeal has been taken.   The second count of the declaration proceeded upon the theory that the work was performed in a proper and necessary manner, but that plaintiff's lands did not touch upon the said canals, and he had not had an opportunity to present any claims for damages until the present injury occurred, and that his right to damages is assured to him by section 17 of the Constitution, providing that private property shall not be taken or damaged for public use without compensation, etc.

There was a demurrer to this count of the declaration which was overruled, and thereupon a plea was filed by the defendant, denying that it was guilty, etc., in the manner, etc., set forth in the declaration, and notice under the general issue was given that defendant is a public corporation not liable for damages except in the

137 Miss.—26.

manner provided by law; that the work resulting in
damages to the plaintiff was not done and performed by
the defendant, but was done by an independent contractor
under a contract duly and lawfully entered into, etc., by
which the contractor agreed to pay and assume liability
for all damages resulting from the work; further that
the damming up of the ditch was done in the perform-
ance of the work of cleaning out drainage ditches and
that said work was absolutely necessary and was done
by an independent contractor, and that the details of
the work were not controlled by the defendant; further
that the drainage district was legally created under
chapter 195, Laws of 1912, in the year 1913, and that
all provisions of law were complied with and assess-
ments of benefits and damages then made, but said lands
involved in this suit were then in the district and still are
in the district, and that the benefits and damages have
been assessed for the laying out of the said drainage.
There was a verdict for three hundred dollars for the
plaintiff, from which this appeal was prosecuted.

The appellant contends that the damages here involved
were within the contemplation of the original laying
out of the district, and that they must have been claimed
at that time, or be precluded by the creation of the
district at that time, relying upon *Moore* v. *Swamp
Dredging Co.,* 125 Miss. 842, 88 So. 522, and *Minyard* v.
*Pelucia Drainage District,* 133 Miss. 847, 98 So. 225. The
appellee contends that because the Moore case, *supra,*
was a grant of a right of way and touched upon the
canals, that it is different from the present case where
the lands damaged lie some distance away from the
canals.   The present canals which were being dredged
out were laid out in accordance with the original plans
of the district when created.

It is not a case of constructing new and independent
drains not within the contemplation of the plans and
specifications in the original creation of the district.   In
other words, the canals here involved are the canals

provided for in the original creation of the district. It is immaterial whether the lands touched upon or are adjacent to the canals. When the plans and specifications are filed, and notice given as required by law, the property owner must determine for himself as best he may whether his land will be benefited or damaged by the proposed project as it is proposed to be constructed. It may be a difficult thing to estimate whether it will damage him or not, but the width and depth of the canals, the contour and extent of the territory to be drained, the volume of water that will pass, through these canals and over the territory, and all matters which he must consider and deal with then. When these ditches were laid out, whatever was necessary to do to maintain them in the future must be considered by the district and by the property owners of the district at that time, and if it is necessary and proper to dam up these canals to clean them out from time to time, the property owner must know this and provide for this contingency in making his claims for damages at the time of the creation of the district. This is what we understand the Moore case, *supra,* to hold. It is immaterial whether the right of way was obtained by a general grant, or whether it was acquired by condemnation proceedings so far as these claims are concerned. Of course a person may waive by contract all claims for damages, in which case he never could recover any. He may also, by failing to propound his claim for damages at the proper time, waive claims therefor as was distinctly held in the Minyard case, supra.

It is true that it is difficult to determine how often it may be necessary to redredge these canals, or at what season of the year the work may be required to be done to protect the district in the drainage contemplated. It is all a matter of engineering and calculation, and where no changes are made in the district all damages are fixed at the time of the creation of the district, or during its progress. Of course, if new drainage schemes not with-

in the original contemplation are undertaken, a new damage would arise, and it would be necessary to provide for that, but if not provided for the courts would be open to the person whose property was taken or damaged.

Under the record now before us the damages were within the contemplation of the original laying out of the district. The judgment must be reversed, because of the failure to grant the peremptory instruction requested by the defendant.

*Reversed and dismissed.*