No. 36,141

WILLIAM PRICKETT, *Appellee,* v. THE BELVUE DRAINAGE DISTRICT and HERMAN HENNINGSON, ALLAN FULLMER, HARRY RAINES, as Commissioners, etc., *Appellants.*

(152 P. 2d 870)

Opinion

filed November 4, 1944.

O. B. *Eidson,* of Topeka, argued the cause, and *T. M. Lillard, Philip H. Lewis* and *James W. Porter,* all of Topeka, were on the briefs for the appellants.

A. *Harry Crane,* of Topeka, argued the cause, and *Erle S. Francis* and *John G. Egan,* both of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action by a landowner to recover damages from a drainage district for injury to his property resulting from the flow of water through a drainage ditch. The trial court overruled a demurrer to the petition, and the defendant district appeals. The question presented is whether the petition stated a cause of action against the drainage district.

The essential averments of the petition may be briefly summarized. The plaintiff, William Prickett, owns and with his family resides on a farm in Pottawatomie county; the defendant, the Belvue drainage district, is an established drainage district covering territory in that county on the north side of the Kansas river, where the plaintiff's land is located. In 1931 plaintiff conveyed by general warranty deed to the State Highway Commission a strip of land 200 feet wide east and west and extending south from the highway north of his farm to the right of way of the Union Pacific railroad; in the same year the defendant constructed a drainage ditch starting at the Vermillion river north of plaintiff's land and running south from that point and then through the center of this 200-foot strip of land; at the time of its construction the drainage ditch was about twenty-five feet wide at the top, twenty feet wide at the bottom, and was constructed for the purpose of diverting and carrying some of the water from the Vermillion river and emptying it into the Kansas river south of plaintiff's land; Pottawatomie county constructed a bridge over this ditch on the east and west highway just north of plaintiff's farm and he and his employees used this bridge going from and to his residence and farm buildings in connection with his farm operations; the soil through which the ditch was dug is a sandy loam top soil and from several feet below the surface or top soil is composed of pure sand of a fine, shifting character; on October 10, 1941, the Vermillion river reached flood stage and the overflow poured into the ditch; on or about that date the defendant "widened and deepened said ditch at its north end to make it take in

and carry a larger volume of water than before, and thereby caused a greater discharge of water into said ditch than was originally planned for said ditch to carry," and "by reason of the widening and deepening of the north end of said ditch and the greater volume of water which poured into it the action and power of said large volume of water against the banks cut the sandy subsoil and the top soil away along the east side of said ditch;" and on or about the 12th day of October, 1941, another rise in the water of the Vermillion river again filled the ditch "which had been widened and deepened as aforesaid, and the great volume of water at both times above stated, caused continuous cutting, by the action of such water, of the east bank of said ditch to such an extent that the water invaded plaintiff's land on the east side, and washed out and carried away about five acres of heavy rich top soil and the soil thereunder," with the result that said five acres was left without any soil on which crops could be raised, and "its surface was much lowered and made difficult of access;" as a result of this erosion the east approach of the highway bridge was washed out and has never been filled nor the bridge repaired, and traffic along the highway has thereby been "made impracticable and has been discontinued;" as a result of losing this bridge plaintiff has been compelled to travel several miles in order to reach different parts of his farm; as a result of this erosion caused by the overflowing of his land the value of his entire farm has been greatly diminished.

The plaintiff asked damages in the sum of $750 for the actual loss of the five acres of land; $1,000 for the extra travel resulting from losing the use of the highway, and $3,000 for depreciation in value of the whole farm.

The plaintiff further alleged that by the erosion brought about by defendant's action in enlarging the mouth of the ditch a "wrongful nuisance" had been created "which will constantly recur unless defendants be compelled to restrict the inflow of water in said ditch . . . and to properly protect the banks of said ditch, and the same will work an irreparable injury to plaintiff and his farm, and will result in interminable injuries to plaintiff, and burden him with endless injury and litigation unless plaintiff is relieved in equity." He further alleged that the defendant, although often notified by him of the damage being caused and requested to remedy the situation, had refused to pay damages or to limit the flow of water into the ditch or to properly guard the banks of the ditch by riprapping

or other means. Asserting that he had no adequate remedy at law he prayed for an injunction compelling the defendant "to properly restrict the inflow of water into said ditch, and to restore, maintain, and guard, the banks of said ditch, to prevent future injuries and damages to the plaintiff and his land."

Appellant invokes some well-established principles of law. But do these principles, under the facts alleged in the petition, bar recovery?

The first principle is that a drainage district, duly organized and incorporated under the provisions of the statute (Laws 1905, ch. 215, and amendments thereto, G. S. 1935, 24-401 *et seq.*), is an arm of the state, exercising governmental functions. (*Jefferson County v. Drainage District,* 97 Kan. 302, 155 Pac. 54; *State, ex rel., v. Kaw Valley Drainage District,* 126 Kan. 43, 47, 267 Pac. 31 and cases cited.) We find nothing in the petition which is inconsistent with this principle.

The second principle, stressed by appellant, is that a drainage district has broad powers to change the natural channels of watercourses, to construct drainage works, and in the exercise of such powers the officers may exercise discretion and judgment free from interference or control by the courts in the absence of fraud or bad faith. This also is well settled. (*Alber v. Kansas City,* 138 Kan. 184, 189, 25 P. 2d 364; *Drainage District v. Drainage District,* 104 Kan. 233, 235, 178 Pac. 433, and cases cited.) At least as far as the attempt to recover damages is concerned the petition does not seek to nullify this principle. Assuming that the action of the drainage district officers in deepening and widening the ditch was taken in the exercise of their judgment and in good faith, the question still remains whether the district is liable for damages caused in accomplishing their purpose.

Appellant next urges that in the absence of specific statutory provision therefor a drainage district is not liable in damages for injuries arising in the course of its work. In support of this proposition appellant stresses, among our own decisions, the cases of *Jefferson County v. Drainage District,* 97 Kan. 302, 155 Pac. 54; *Todd v. Drainage District,* 109 Kan. 754, 201 Pac. 1096; *Gorman v. City of Rosedale,* 118 Kan. 20, 234 Pac. 53; and *State, ex rel., v. Kaw Valley Drainage District,* 126 Kan. 43, 267 Pac. 31. We do not find these cases persuasive on the issue before us. Several of them announce the well-established rule that governmental bodies are not ordinarily.

liable for the negligent acts of employees. But we do not interpret the instant petition as an attempt to state a cause of action for negligence. It alleges in substance that at a time when the Vermillion river was in flood stage the defendant enlarged the mouth of the drainage ditch in order to divert through the ditch a larger amount of water than was originally intended when the ditch was constructed, and that as a direct result of this action the plaintiff's land was eroded and other damage caused as heretofore recited. Its prayer for relief is not based upon acts of negligence but upon the taking or damaging of private property for drainage purposes.

In the Todd case, *supra,* the plaintiff alleged that he was injured as the result of the negligent conduct of a foreman, while working on a drainage boat used in cleaning the channel of the river. No such situation is here presented.

In the Gorman case, *supra,* a boy, while wading in a stream near the entrance of an artificial tunnel which the defendant city had constructed for the purpose of diverting the water of the stream into the Kansas river, slipped into deep water and was drowned. The father of the boy brought action against the city, alleging negligence in the construction and maintenance of the artificial channel. Relief was denied on the grounds that the artificial channel and tunnel were not an "attractive nuisance" and that since the city, in the construction and maintenance of the artificial channel, was acting in its governmental capacity it was not liable in an action based on negligence in the absence of statute fixing such a liability.

*State, ex rel., v. Kaw Valley Drainage District,* supra, simply held that the drainage district was not authorized under the statute to engage in the business of operating a sand plant for profit.

The Jefferson County case, *supra,* involved the question of whether the drainage district or the county was responsible for erecting bridges over ditches which cut across county highways. It was said that the fact that the ditches improved and rendered more valuable the lands of private individuals charged with the cost of the improvement did not make the corporation any the less a quasi-public one and did not relieve the county from its duty to maintain and keep the public highways in fit condition for travel. In the instant action there was no attempt to require erection of a highway bridge either by the drainage district or by the county.

Appellant contends that the principles to be applied are the same whether plaintiff seeks to recover for property taken or damaged

or for personal injuries resulting from negligence. We cannot agree to that view. The drainage district statutes clearly contemplate that compensation be paid for property taken or damaged by works constructed for the benefit of the district. Whether damage to private property without compensation therefor might be upheld under certain circumstances, as an exercise of police power we need not here consider. We are dealing with a statute which provides for compensation.

It is unnecessary to recite at length the provisions of the drainage district law. Suffice it to say that the statute provides that a drainage district may, in connection with the alteration or change of any part of the channel of the natural watercourse or the establishment of a new channel "take private property for public use by exercise of the right of eminent domain in the manner hereinafter provided." (G. S. 1935, 24-407, *fourth*.) In the carrying out of such work it may issue negotiable bonds "to pay for the purchase or condemnation of land necessary therefor, to prevent overflow and protect the property situated within the district from damage and injury thereby." (G. S. 1935, 24-407, *thirteenth*.) Procedure for the exercise of the right of eminent domain is set forth in detail. (G. S. 1935, 24-438 *et seq.*)

The issue being here upon demurrer, the averments of fact must be liberally construed in the interest of the pleader. It was clearly alleged that the purpose in widening and deepening the ditch at its north end at the time the Vermillion river was at flood stage was to divert into the ditch a larger volume of water than had been originally planned and to cause the ditch to be enlarged along its course by erosion. As a taking of property we see no substantial distinction between the purposed enlargement of a drainage ditch by putting into action the force of erosion and the same enlargement by mechanical means. Knowing, as they must be assumed to have known, the nature of the soil through which the ditch was constructed, the drainage district officers obviously widened and deepened the opening for the very purpose of enlarging the ditch by erosion. We think that a reasonable interpretation of the allegations of the petition requires that conclusion. This imputes no bad faith on the part of the drainage district officers. On the contrary, it fairly assumes that their action was for the purpose of averting a much greater damage to the property of others located within the district. Had the further appropriation of the plaintiff's land, of

which he now complains, been contemplated when the original construction plan was adopted there certainly can be no question that he would have been entitled to recover for all damages properly allowable in a condemnation proceeding. Must we say that because plaintiff's property was taken in an emergency action when there was no time to follow the procedure for condemnation he is barred from recovery? We do not think the law requires so unjust a result.

Not only does the statute contemplate compensation for property taken or damaged but plaintiff's right of recovery is buttressed by the constitutional guarantees against the taking of private property for public use without compensation. That fundamental doctrine has been specifically applied to cases where landowners have had no opportunity to present their claims under the statutory procedure prescribed in drainage district laws. (28 C. J. S. 388; *Belzoni Drainage Dist. v. Cobb*, 137 Miss. 393, 102 So. 259; *Sawyer v. Drainage District*, 179 N. C. 182, 102 S. E. 273; *Joint Board v. Lindemeyer*, 29 Ohio App. 505, 163 N. E. 919; *Ringering v. Wood River Drain. and Levee District*, 212 Ill. App. 170.)

Consideration of the demurrer raises no issue as to what was actually within the purview of the original plans and specifications, and of course we are not here passing upon any individual items of alleged damage or dealing with any questions as to measure of damages. And, needless to say, we indulge no speculation as to defenses or as to what the evidence may disclose. We only say that the petition, reasonably interpreted, asserts a departure from the original plans adopted and upon the basis of which property damage was determined and assessments for benefits were levied, and that it states a cause of action. The result of a contrary holding would be that drainage districts might extend and enlarge drainage projects, beyond that which had been originally adopted, without being required to compensate the owners for additional property taken or new damage imposed by virtue of the enlargement of the project.

It is suggested that even if a cause of action be stated there is no provision in the statutes for collection of a judgment that might be entered against the district. Appellee, on the other hand, calls attention to various provisions of the statute with reference to the levying and collecting of general taxes, special assessments and special taxes, and the issuance of negotiable bonds (G. S. 1935, 24-407), and cites cases wherein municipalities have been compelled to levy taxes to pay judgments even though there was no specific

statute providing therefor. The issue before us does not require determination of that question and it is inadvisable to indulge in a mere casual discussion of it.

One further matter calls for brief comment. In addition to asking for damages the plaintiff sought an injunction to restrain the defendant from permitting the increased flow of water into the ditch and to require it to adopt measures for protecting the banks from erosion. It was not alleged that the action of the officers in enlarging the ditch was unlawful, arbitrary, or capricious. On this phase of the matter appellee relies upon an allegation that "there has been and still continues to be a wrongful nuisance." On the issue as drawn and the record as made this question of injunction likewise does not call for answer here. We have already determined that on the question of recovery for damages the petition stated a cause of action. That being true, there was no error in overruling the demurrer.

The judgment is affirmed.