No. 72,896

LANCE and VERONICA BOLYARD, Minor Children by and through their next friend, VERTIE BOLYARD, *Appellants*, v. THE KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *et al., Appellees.*

(912 P.2d 729)

Opinion filed March 8, 1996.

*Caleb Boone*, of Hays, argued the cause and was on the brief for appellants.

*Robert R. Hiller, Jr.*, of Topeka, argued the cause and was on the brief for appellee Ruth Sherlock.

*Donald A. Frigon*, of Dodge City, argued the cause and was on the brief for appellee Kansas Department of Social and Rehabilitation Services.

The opinion of the court was delivered by

LARSON, J.: Vertie Bolyard, as father of Vertie Lance Bolyard, Veronica Bolyard, and Patricia Shannon Bolyard, appeals from the trial court's order of summary judgment in favor of the defendants Kansas Department of Social and Rehabilitation Services (SRS) and SRS caseworker Ruth Sherlock in an action for damages arising from their alleged negligence in the temporary placement of the plaintiff children with their mother.

The plaintiffs contend the trial court erred in determining that SRS and Sherlock are immune from liability under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.* Plaintiffs had originally included in the suit Cheyenne County Attorney Scott Condray, who was dismissed with prejudice after he was granted summary judgment. Further, Patricia Shannon Bolyard, upon learning that the case had been filed on her behalf without her permission, withdrew with prejudice.

Because this action is based upon a factual scenario which occurred in 1982, we will briefly chronicle its background.

An acrimonious divorce action between Vertie Bolyard and his wife, Marguerite Allen Bolyard, commenced in 1978. It resulted in an October 1979 divorce decree wherein custody of the children was given to Vertie with visitation rights for Marguerite to be fixed upon her release from incarceration.

After a November 1981 hearing on Marguerite's motion for temporary visitation, the trial court ordered a home study, and Marguerite was granted visitation on six specific occasions.

Vertie refused to permit the visitation ordered by the court, prompting Marguerite to seek a citation for contempt in January 1982. Vertie failed to appear before assigned Judge Keith Willoughby. Judge Willoughby found Vertie in contempt and placed the children in SRS custody but allowed a January 14, 1982, weekend visitation with Marguerite in Gorham, Kansas, to continue.

The social worker, SRS employee Sherlock, based upon a recent favorable home study report, called Judge Willoughby the weekend the father was in jail for contempt of court. The judge approved SRS's plan, outlined by Sherlock, to leave the children with the mother while the father remained in jail.

Judge Willoughby held a hearing and released Vertie from jail based on his promise to comply with further court orders. Judge Willoughby then recused himself based on an affidavit Vertie filed alleging partiality. In a January 20, 1982, letter to Judge Charles Worden, Judge Willoughby recounted his actions and stated that he had advised Vertie that he had placed the children in the custody of SRS, who in turn had placed them with their mother, and they were not in Russell County.

Judge Steven P. Flood was assigned to the case in early February 1982 and notified all parties that he would hear all pending motions at one time on a later agreed date.

Between January and March of 1982, the Russell SRS had three telephone contacts with Marguerite, visited Shannon's teacher at school, and conducted one home visit. As a result of those contacts, SRS concluded that Marguerite and Will McCurley's (Marguerite's current husband) home was a fit home for the children and more than adequate for their physical, emotional, and mental well-being.

Vertie did nothing for 6 months, but in August 1982, Marguerite, her husband, and the children left Kansas for Florida, without informing SRS or Marguerite's parole officer.

Marguerite did not return to Kansas until January 1984, when she was arrested and pled guilty to aggravated interference with parental custody. The children were returned to Vertie.

In January 1990, the present action was filed in Russell County by Vertie on behalf of the three children, seeking $5,000,000 in damages and contending that SRS and Sherlock were negligent in placing the children with Marguerite and permitting them to remain there in violation of an alleged ministerial duty not to place the children in the home of a parent without the written permission of a district court judge. In addition, the petition alleged that from January 14, 1982, until August 24, 1982, SRS was negligent in failing to regularly inspect Marguerite's home and monitor the children's placement, in violation of an alleged ministerial duty to do so.

In July 1994, the trial court held as a matter of law that SRS and Sherlock were immune from liability since all of the actions they had taken were discretionary functions under the Kansas Tort Claims Act. The trial court rejected the plaintiffs' claim that under the SRS Kansas Manual of Services to Children and Youth, written consent of a district court was required before the children could be placed with a parent, because the manual provisions cited by the plaintiffs did not apply to the present fact situation.

Vertie appeals on behalf of his children. We affirm.

*Did SRS and Ruth Sherlock have a ministerial duty not to place the children with Marguerite under the provisions of the SRS manual such that they cannot claim immunity from liability under the Kansas Tort Claims Act?*

We review this matter under the well-known standard of review for orders of summary judgment set forth in *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995), whereby we resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling was sought. Summary judgment is appropriate where the plead-

ings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law; an adverse party must come forward with evidence to establish a dispute as to a material fact; and the facts subject to the dispute must be material to the conclusive issues. If we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994).

Vertie, on behalf of his two children remaining in the case, contends the trial court erroneously concluded, as a matter of law, that the actions of SRS and Sherlock in placing the children with Marguerite were discretionary acts subject to immunity under the Kansas Tort Claims Act.

The version of the Kansas Tort Claims Act in effect at the time of the alleged improper placement set forth exceptions to liability in K.S.A. 1981 Supp. 75-6104, which reads in applicable part:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(d) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused."

The 1987 amendment to 75-6104 added the phrase "and regardless of the level of discretion involved" and designated the discretionary function exception as subsection (e). The 1987 amendment does not affect the instant case.

The Kansas Tort Claims Act is an open-ended act making governmental liability the rule and immunity the exception. *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 318, 757 P.2d 272 (1988). K.S.A. 75-6103(a) provides that each governmental entity shall be liable for the negligent or wrongful acts or omissions of its employees acting within the scope of their employment under the same circumstances that a private person would be liable. See *Collins v. Board of Douglas County Comm'rs*, 249 Kan. 712, 720, 822 P.2d 1042 (1991).

The governmental entity bears the burden to establish immunity under one of the exceptions in 75-6104. *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 364, 819 P.2d 587 (1991).

In *Hopkins v. State*, 237 Kan. 601, 610, 702 P.2d 311 (1985), we said:

"Discretion implies the exercise of discriminating judgment within the bounds of reason. [Citation omitted.] It involves the choice of exercising of the will, of determination made between competing and sometimes conflicting considerations. Discretion imparts that a choice of action is determined, and that action should be taken with reason and good conscience in the interest of protecting the rights of all parties and serving the ends of justice."

In *Robertson v. City of Topeka*, 231 Kan. 358, 361-62, 644 P.2d 458 (1982), we determined that in deciding whether the discretionary function exception applies, it is the nature and quality of the discretion exercised which should be the focus rather than the *status* of the employee exercising the discretion. The test is whether the judgment of the governmental employee is of the nature and quality which the legislature intended to put beyond judicial review.

"The more a judgment involves the making of policy the more it is of a 'nature and quality' to be recognized as inappropriate for judicial review." *Kansas State Bank & Tr. Co.*, 249 Kan. at 365. The discretionary function exception is applicable only when no clearly defined mandatory duty or guideline exists which the government agency is required to follow. *Collins*, 249 Kan. at 721; *Dugan*, 243 Kan. at 322.

Thus, if specific mandatory guidelines are adopted by the agency regulating the conduct of its employees, thereby removing discretion by imposing a legal duty, 75-6104(d) would be inapplicable. See *Fudge v. City of Kansas City*, 239 Kan. 369, 375, 720 P.2d 1093 (1986).

In *Carpenter v. Johnson*, 231 Kan. 783, 788, 649 P.2d 400 (1982), we held that failure to erect a warning sign on a curve was not an exercise of discretion in part because the Kansas Department of Transportation Maintenance Manual on Signs and Markers for Highways was used to determine when signs should be

erected. We held: "Rules and regulations adopted by an administrative board, here the Department of Transportation, to carry out the policy declared by the legislature in the statute, have the force and effect of laws." 231 Kan. at 789.

Similarly, in *Jackson v. City of Kansas City*, 235 Kan. 278, 287-88, 680 P.2d 877 (1984), we held that an action arising from the collision of two fire trucks was not subject to the discretionary function exception, in part because the drivers had no discretion to disregard traffic statutes, regulations, ordinances, and the departmental policies. Plaintiffs base their extremely tenuous argument that the placement with Marguerite was not discretionary on provisions of the SRS manual in effect at the time of the placement requiring written authorization from the district court judge before placing a child with a parent in certain circumstances.

We are not convinced that the oral approval of the district judge followed by his written report to the administrative judge of the judicial district as to his actions in approving the SRS placement would be insufficient to satisfy the requirement in the SRS manual for written consent of a district court judge. We need not decide the case on that basis because an examination of the manual provisions clearly shows that no written authorization was required.

The SRS manual upon which the plaintiffs rely reads under the general heading of "<u>CUSTODY</u>" at § 6020.8 "<u>Placement with the Secretary of SRS in a Divorce Action</u>":

"Placements with the Secretary pursuant to K.S.A. 60-1610(a) are considered custody only placements until the court grants authority to the Secretary to consent to adoption of the children. This authority can be obtained only after one year has elapsed and a hearing held. If such hearing results in the Secretary being given authority to consent to adoption, guardianship results. (See section 6021.3)"

This provision applies to the placement of the Bolyard children with SRS in the present case. It contains no prohibition on placement of the children with a parent. Further, there is no requirement for written permission of the district judge in order to make a parental placement.

There *is* a provision elsewhere in the manual requiring written permission of the district judge, but only when the placement is under § 6021 of the SRS manual which specifically states that it

pertains to guardianship. There, under § 6021.3, when a hearing has already resulted in the Secretary being given authority to consent to adoption and guardianship results, SRS is prohibited from placing the child in the home of a parent without the written consent of the judge of the district court. *Such is not the factual situation in our case.* Neither Vertie or Marguerite had been found to be an unfit parent, and SRS had only temporary custody of the children, not guardianship.

Further, the only other provision where SRS placement of a child in the home of a parent requires the written consent of the judge of the district court is under § 6020.1. This section is not applicable to our case because it relates only to a Chapter 38 placement under facts entirely different from those we face here. In this case, the children were never adjudicated to be deprived, and thus § 6020.1 and its subparts do not apply.

We reach the same result here as this court reached in *G. v. State Dept. of SRS*, 251 Kan. 179, 191, 833 P.2d 979 (1992), where we held that the decision of SRS to remove a child from his home after a finding of sexual abuse is discretionary. As in this case, an argument that SRS had taken action prohibited by its manual was found to be flawed. Justice Six specifically stated: "We cannot endorse such a restrictive concept. SRS carries a responsibility to act in the best interests of the children in its custody regardless of whether the harm is specifically defined in its guidelines." 251 Kan. at 191.

*G. v. State Dept. of SRS* utilizes *Pickett v. Washington County*, 31 Or. App. 1263, 572 P.2d 1070 (1977), as authority and endorses the *Pickett* court's conclusions as to: (1) the importance of the government function involved and (2) the extent to which governmental liability might impair the exercise of that function. The *Pickett* court reasoned a more important governmental function is hard to imagine than when government undertakes to protect the welfare of children by placing them in a wardship. In caring for children within its custody, the government and its agents are continually called upon to make delicate and complex judgments, often involving weighing and balancing individualized risks. The *Pickett* court stated: " 'Decisions of this nature rank high in the continuum

of discretion and should not be subject to hindsight scrutiny by courts and juries.' " 251 Kan. at 192.

There is no doubt that summary judgment was properly granted under the facts of this case. We need not reach or consider the additional arguments made by the appellees as to the lack of foreseeability, other exemptions from liability, and the lack of negligence as a matter of law.

It appears that in their reply brief, for the first time on appeal, the plaintiff children assert that their placement with Marguerite was not within SRS's discretion because existing visitation arrangements remained in place and SRS was bound to retrieve the children after the court-ordered visitation period was over. This new legal theory may not be asserted for the first time on appeal or raised in a reply brief. See *Sharp v. State*, 245 Kan. 749, 753, 783 P.2d 343 (1989), *cert. denied* 498 U.S. 822 (1990).

Additionally, the children remained in the temporary custody of SRS and they were merely placed with Marguerite. There was no court order for a different disposition before the children were improperly transported out of the state of Kansas and no basis for requiring different action on the part of SRS.

Finally, the contention that the trial court erred in ruling SRS and Sherlock did not breach a ministerial duty to inspect and monitor the children's placement with Marguerite is without merit. While this argument is mentioned in plaintiffs' initial brief, it is not discussed or bolstered by any citation of meaningful authority. It is conceded that there is no provision in the SRS manual regarding supervision which imposes a specific ministerial legal duty. Instead, the children contend only that supervision is required regardless of whether the manual contains any controlling provision.

The trial court ruled that all of the defendants' actions at issue were within the discretionary function exception of the Kansas Tort Claims Act. Plaintiffs complain specifically that SRS was negligent in failing to talk to Marguerite's parole officer and failing to adequately monitor the household. The means by which placements are monitored and the people to whom social workers converse in supervising placements are not subject to any carefully drawn, precise legal standard, but involve discriminating judgment between

competing interests and are clearly beyond the nature and character of acts the legislature intended to be subject to judicial review.

The trial court did not err in granting summary judgment.