No. 67,513

C.J.W., a minor, by and through his next friend and natural mother, L.W., *Appellant*, v. STATE OF KANSAS, *Appellee*.

(853 P.2d 4)

Opinion filed April 27, 1993.

*Aaron N. Woods,* of Risjord & James, P.C., of Overland Park, argued the cause, and *Randy W. James,* of the same firm, was with him on the briefs for appellant.

*B. Scott Tschudy,* of Perry & Hamill, of Overland Park, argued the cause, and *Thomas A. Hamill,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: This is an appeal by the plaintiff, C.J.W., a minor, from an order of the district court granting the defendant, State of Kansas, summary judgment. The Court of Appeals affirmed the judgment of the district court in an unpublished opinion filed September 18, 1992. We granted plaintiff's petition for review and now reverse the Court of Appeals and the district court.

In the district court, the plaintiff sued the State of Kansas and a named individual. As both the plaintiff and the individual defendant were minors subject to juvenile proceedings when the events herein took place, Supreme Court Rule 7.043 (1992 Kan. Ct. R. Annot. 36) applies to our opinion. Therefore, the minor plaintiff will be referred to as C.J.W. or plaintiff and the individual defendant will be referred to as Randy. In quotes from earlier proceedings in this case we have substituted these designations for the actual names used without further indication that we have done so. Randy is not a party to this appeal.

On two separate occasions during the last week of June, 1983, plaintiff, a 12-year-old boy, was allegedly assaulted and sexually molested by Randy while both were being detained at Johnson County Juvenile Hall. Plaintiff's amended complaint alleged in part:

"5. Thereafter, *on or about June 23 and June 30, 1983,* the minor Plaintiff, C.J.W., was brutally assaulted, raped and sexually molested by Defendant, Randy, a youth who was being detained on the same premises as Plaintiff,

proximately causing Plaintiff to sustain personal injury, mental anguish, emotional distress, psychiatric disorder, embarrassment, humiliation, and social withdrawal which has and will affect the minor Plaintiff for the rest of his life." (Emphasis added.)

Randy had been committed to the custody of the State of Kansas Department of Social and Rehabilitation Services (SRS) in 1976 by the Woodson County Juvenile Court. Sharon Minor, the SRS social worker in charge of Randy's case, initially claimed during discovery that she did not find out he was placed at Juvenile Hall until after the alleged attacks on plaintiff; however, on further examination she conceded she may have been in error in making such a claim and admitted she knew, on June 24, 1983, that Randy was at Juvenile Hall.

The files of SRS produced during discovery revealed that various officials of the State, as well as Sharon Minor, had knowledge of Randy's violent and aggressive behavior long before the alleged attacks on plaintiff in June of 1983. On January 6, 1976, protective services were requested for Randy because he was an "aggressive child." During his evaluation at the Southeast Kansas Mental Health Center in January of 1976, Randy was "belligerent, hostile, angry," and "attempted to destroy the office." Randy was placed in SRS custody on July 16, 1976. His teachers advised SRS that he was "disruptive" and violent with other students. Reports filed with the Woodson County Juvenile Court indicate that Randy was a bully and a fighter at school. In his first placement at the Gillis Home, his unit supervisor reported that Randy acted out in the form of "bullying, fighting and being generally disruptive in the cottage." The unit supervisor also reported in a progress summary that Randy was "very aggressive" and "sometimes very rough on the younger children." A Gillis Home caseworker noted in his report that Randy "continues to bully and hit weaker boys," "is frequently fighting with other boys," "picks on smaller boys such as on May 10, 1978, when he kicked an East Cottage boy in the side and knocked him on the ground," "is always ready to fight, his answer to any conflict is either fighting or a one-on-one conference with a staff member," and "to show his anger Randy will be abusive, both physically and verbally." SRS staffing notes from December 8, 1981, indicate that Randy had a violent temper and was "too much" for his aunt and uncle to handle. A

psychiatric evaluation from St. Francis Boys' Home stated that Randy admitted to getting into several fights while at St. John's Military School. Topeka State Hospital reported that Randy threatened to punch staff members, and that he "has been in several altercations with other male peers." While at the Residential Home for Boys in Wichita, Randy was involved in fights on April 18 and 22, 1983, and was nearly involved in an altercation on April 20, 1983. The foregoing statement of facts is taken primarily from plaintiff's alleged uncontroverted statement of facts number 27 and filed in opposition to the defendant's motion for summary judgment. Those alleged facts were then controverted by the defendant.

Around June 9, 1983, Randy ran away from the Wichita Residential Home and made his way to his stepfather in Florida. Shortly thereafter Sharon Minor located Randy in Florida and made arrangements for his return to the Kansas City area. Randy returned about June 21, 1983, and was placed in Temporary Lodging for Children III in Johnson County. Randy immediately got into trouble after he struck another resident in the head with a pool ball, prompting his transfer to Juvenile Hall on June 23, 1983. His first attack on the 12-year-old plaintiff apparently took place that same day. At the time of the alleged attacks Randy was 17 years old.

Plaintiff also contends that SRS had knowledge of Randy's sexually deviant tendencies. His aunt had reported that Randy acted out sexually toward her three-year-old daughter. SRS staff notes indicated that Randy's aunt and uncle refused to keep him because he tried to molest their daughter. A child care worker report stated that Randy acted out sexually on occasions and was believed to be knowledgeable on the subject of sex. A report from Shawnee County Youth Shelter in March 1981 indicated he was considered a rapist by that facility.

Upon learning of Randy's detention in Juvenile Hall, Sharon Minor talked with officials there on June 24, 1983, but did not provide Juvenile Hall with any records or other information regarding Randy's history or any instructions regarding special measures that should be taken to supervise Randy or protect the other detainees from him.

Following discovery, the State filed a motion for summary judgment and in support thereof set forth numerous facts which it contended were uncontroverted. The plaintiff took issue with several of the stated facts which primarily related to whether the State had a duty to provide information to the authorities at Juvenile Hall and to whether SRS knew that Randy was being held at Juvenile Hall. In addition, plaintiff submitted additional facts which he contended were uncontroverted and which related primarily to the knowledge of the State concerning Randy's violent and aggressive behavior and its knowledge of his sexually deviant behavior. These alleged facts of the plaintiff were then controverted by the State in its response which stated: "These facts are in issue."

After argument on the State's motion, the court granted summary judgment to the State. The journal entry reads in pertinent part:

"1. That the Court has made a conscious effort to not give any weight to the in camera inspection the Court made of the numerous documents produced by the State. The Court has carefully reviewed the documents appended to the respective pleadings that concern the Motion before the Court. However, it is not a proper function for the Court to weigh the merits of probable likelihood of what is or is not reasonable or what was or was not an aspect of causation.

"2. That in accordance with *Kansas Supreme Court Rule 141*, the following facts were not controverted by Plaintiff, and therefore, the State's Statement of Uncontroverted Facts numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21 and 26 are deemed admitted. The Court notes that Plaintiff has controverted the State's Statement of Uncontroverted Facts numbers 10, 19, 22, 23 and 24, and further notes that the Plaintiff has set forth additional uncontroverted facts. However, the Court makes no finding as to the facts which Plaintiff controverts or Plaintiff's additional uncontroverted facts.

"3. That the focus of the Court's concern is the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.* ("Act") and as it applies to this case, it does not create a legal duty on the part of the State and does present a discretionary function.

"4. That the Court held that within the last number of years we have gone away from sovereign immunity and have reached a Tort Claims Act which presents a balancing of interest. A number of decisions have construed the Act but we have not as yet gone to the proposition of making the State virtually an insurer of the general public.

"5. The Court found and held that the Act as it applies to the uncontested facts in this case, does not create a legal duty on the part of the State and

does present a discretionary function and that the State was within its proper discretion in all of its actions, and the Court need not determine whether it was reasonable or whether there was a causation factor.

"6. That based on the foregoing ruling that the Court does not need to consider Defendant's Motion to Dismiss or any other pending motions and makes no ruling considering same.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the State had no duty to Plaintiff. As such, the State of Kansas' Motion for Summary Judgment is sustained.

"IT IS SO ORDERED."

As set forth in the journal entry, the trial court concluded that the uncontroverted facts of the case did not give rise to a legal duty on the part of the State. The court specifically made no finding as to the facts which plaintiff controverted or plaintiff's additional statements of fact and concluded that the State acted within its discretion and was immune from liability under the discretionary function exception to the Kansas Tort Claims Act, K.S.A. 1992 Supp. 75-6104(e). The Court of Appeals affirmed, and we granted review.

The issues in this appeal are (1) whether the trial court erred in determining that the State had no legal duty to control Randy or to warn others of his violent and sexually deviant tendencies, (2) whether the trial court erred in concluding that the discretionary function exception to the Tort Claims Act, K.S.A. 1992 Supp. 75-6104(e), entitled the State to immunity from liability, and (3) whether there were controverted material facts which precluded the granting of summary judgment.

We will first address the issue of whether the State owed plaintiff a duty to warn of Randy's violent and sexual propensities and to protect him from Randy. In *Durflinger v. Artiles,* 234 Kan. 484, 488, 673 P.2d 86 (1983), this court stated:

"Negligence exists where there is a duty owed by one person to another and a breach of that duty occurs. Further, if recovery is to be had for such negligence, the injured party must show: (1) a causal connection between the duty breached and the injury received; and (2) he or she was damaged by the negligence. . . . *Whether a duty exists is a question of law.* [Citations omitted.] *Whether the duty has been breached is a question of fact.*" (Emphasis added.)

As a general rule, in the absence of a "special relationship" there is no duty on a person to control the conduct of a third

person to prevent harm to others. A special relationship may exist between parent and child, master and servant, the possessor of land and licensees, *persons in charge of one with dangerous propensities, and persons with custody of another. Washington v. State,* 17 Kan. App. 2d 518, 521, 839 P.2d 555 (1992); Restatement (Second) of Torts §§ 315-20 (1964).

Plaintiff relies upon the Restatement (Second) of Torts to argue that, because the State took charge of Randy in 1976 and knew of his dangerous tendencies, the State had a special relationship with both plaintiff and Randy which created a duty on behalf of the State to control Randy and to protect plaintiff.

There are several sections of the Restatement (Second) of Torts which appear applicable to the case before us. Restatement (Second) of Torts § 314A (1964) sets forth certain special relations which may give rise to a duty on the part of one person to protect another. It provides, in part, that one who is required by law to take custody of another under circumstances which deprive that person of the normal opportunities for protection is under a duty to protect the person taken into custody against unreasonable risk of physical harm from others.

In §§ 315—320 of the Restatement (Second) of Torts the duty to control the conduct of third persons is set forth and discussed. Several sections are relevant.

"§ 315. General Principle
"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
    (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
    (b) a special relation exists between the actor and the other which gives to the other a right to protection."

"§ 319. Duty of Those in Charge of Person Having Dangerous Propensities
"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

"§ 320. Duty of Person Having Custody of Another to Control Conduct of
        Third Persons
"One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the

conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor

(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

(b) knows or should know of the necessity and opportunity for exercising such control."

Plaintiff also relies upon *Cansler v. State,* 234 Kan. 554, 675 P.2d 57 (1984), where the rule set forth in Restatement (Second) of Torts § 319 was adopted as the law of this state governing the duty owed to area residents and area law enforcement personnel by those in charge of persons with dangerous propensities in the State penitentiary. In *Cansler,* prison officials failed to inform area law enforcement personnel when seven armed inmates, all of whom were serving life terms for murder, escaped from the Kansas State Penitentiary. Cansler, a law enforcement officer in Bonner Springs, unaware of the prison escape, observed a traffic violation and pursued an automobile in which three of the escapees were fleeing. Cansler came upon the car, wrecked and in a ditch, and saw the occupants fleeing to a nearby house. Surmising the car might be stolen, he radioed for backup, then approached the house, where the suspects had apparently taken shelter. As he approached the house, one of the inmates shot Cansler three times with a high-powered rifle taken from the prison guard tower. As a result of his injuries, Cansler sued the State of Kansas and the Kansas State Penitentiary.

The trial court refused to dismiss Cansler's claim against the State, and the State filed an interlocutory appeal. Among other things, this court was asked to determine whether the State owed a duty to the plaintiff, and, if so, whether the acts or omissions of the State fell within the discretionary function exception contained in what is now K.S.A. 1992 Supp. 75-6104[e].

The Supreme Court cited to Restatement (Second) of Torts §§ 315 and 319 and found that the State did have a duty:

"It is the rule in this state that one who takes charge of a third person, whom he knows or should know to be likely to cause bodily harm to others if not controlled, is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." 234 Kan. 554, Syl. ¶ 1.

Applying this rule to the facts presented, the court concluded the State not only had the duty to securely confine the seven inmates but also had a duty to take reasonable steps to notify residents in the area and other law enforcement officers of the escape.

The State attempts to distinguish *Cansler* from the case now before us on the facts of the two cases. The State claims it did not have a duty here because SRS custody of Randy was interrupted by his detention at Juvenile Hall. Sharon Minor, however, testified that she was still the social worker in charge of Randy's case when he was initially placed at Juvenile Hall. Minor also testified that when Randy was taken into custody at Juvenile Hall, he was still under SRS supervision, and once he was adjudicated to be a juvenile offender, the SRS division in the county where the offense was committed would take charge of his case. In short, SRS continued to be responsible for Randy upon his arrival at Juvenile Hall and would remain responsible even following his adjudication as a juvenile offender.

The recent case of *Washington v. State*, 17 Kan. App. 2d 518, is even more directly on point than *Cansler*. Washington was an inmate at Lansing Correctional Facility and sustained serious physical injuries when stabbed by another inmate, Timothy Vaughn. Following a fight between Washington and Vaughn, both were placed in the Adjustment and Treatment Unit (A & T). While in A & T, Vaughn made several threats against Washington which were allegedly heard by and reported to officers at A & T. Later, both parties were released from A & T, returned to the general prison population, and placed in the same cellhouse. On the same day of his release from A & T, Vaughn made good on his threats and stabbed Washington in the left eye with an ice pick. Washington filed suit against the State, alleging that the State breached a duty it owed to Washington to warn and protect him from Vaughn. Washington appealed the grant of summary judgment in favor of the State. The Court of Appeals set forth the issues:

"The State filed a motion for summary judgment, arguing: (1) The prison officials did not breach any duty owed to Washington; (2) Washington's injuries were not proximately caused by the prison officials' acts or omissions; (3) the police function exception (K.S.A. 1991 Supp. 75-6104[n]) of the

Kansas Tort Claims Act precluded Washington's recovery; and (4) the discretionary function exception (K.S.A. 1991 Supp. 75-6104[e]) of the Act also precluded Washington's recovery. The district court concluded the State did owe a duty to Washington to protect him from Vaughn, but held the State was not liable to Washington by virtue of the discretionary function exception." 17 Kan. App. 2d at 520.

In discussing whether the State owed a duty to Washington, the Court of Appeals stated:

"What duty did the State owe Washington? Did the State have a duty under Restatement (Second) of Torts §§ 315-320 (1977) to exercise reasonable care to control Vaughn and prevent him from harming Washington because of its special relationship with Washington or merely a duty to treat Washington humanely as required by K.S.A. 75-5210(a)? The question presented is one of first impression in this state.

"As a general rule, in the absence of a 'special relationship' there is no duty on an actor to control the conduct of a third person to prevent harm to others. *McGee v. Chalfant,* 248 Kan. 434, 438, 806 P.2d 980 (1991); Restatement (Second) of Torts § 315 (1977). A special relationship may exist between parent and child, master and servant, the possessor of land and licensees, persons in charge of one with dangerous propensities, and persons with custody of another. Restatement (Second) of Torts §§ 316-320.

"Washington relies upon Restatement (Second) of Torts to argue the State had a special relationship with both Washington and Vaughn which created a duty on behalf of the State to control Vaughn and protect Washington." 17 Kan. App. 2d at 521.

The court then set forth the provisions of Restatement (Second) of Torts §§ 315, 319, and 320, which will not be repeated here. The court discussed *Cansler,* pointing out that the Supreme Court had adopted § 319 in that case, and stated:

"In resolving the question of what duty is owed Washington, we conclude the duty defined in Restatement (Second) of Torts § 320, quoted above, most closely reflects the relationship of the parties and should be applied to the penitentiary setting to define the duty owed by the State to control a prisoner and prevent harm to another prisoner. In the absence of a statute, nearly all courts that have considered the matter have concluded that prison officials owe a duty of ordinary or reasonable care to safeguard a prisoner in their custody or control from attack by other prisoners. This duty to provide reasonable care to protect an inmate from violence is not violated in the absence of a determination that the danger was known or, in the exercise of ordinary care, should have been known by a prison official. [Citations omitted.] By application of the duty defined in Restatement (Second) of Torts § 320, the State does not become the insurer of the safety of a prisoner. The State only becomes liable in the event that damage proximately results from a failure to exercise reasonable care to prevent

harm. Again, this duty to provide reasonable care to protect an inmate from violence is not violated in the absence of a determination that the danger was known or, in the exercise of ordinary care, should have been known by a prison official.

"Whether a duty has been breached is a question of fact. *Durflinger*, 234 Kan. at 488. Application of the duty set forth in Restatement (Second) of Torts § 320 and the aforementioned cases suggests that, because Washington was in the custody of prison officials when threatened by Vaughn and officials allegedly knew of that threat and had knowledge of Washington's fight with Vaughn, those officials had a duty to exercise reasonable care to control Vaughn and prevent him from harming Washington. Whether the State breached its duty to Washington is a question of fact which should be submitted to a trier of fact." 17 Kan. App. 2d at 523-24.

The foregoing language from *Washington* is equally applicable to the factual situation now before us.

The justification for the application of §§ 319 and 320 to the facts of this case is much more obvious than in either *Cansler* or *Washington*. Here a 12-year-old child was taken into custody by juvenile officials and placed at the mercy of a 17-year-old bully who had a long history of violent and sexually deviant acts toward others, all of which was known to juvenile officials of the State and SRS. Children who are taken into custody should be protected from others in custody and the duty to children such as the plaintiff is more compelling than that due either of the plaintiffs in *Cansler* and *Washington*. We have no hesitancy in concluding that §§ 315, 319, and 320 of the Restatement (Second) of Torts apply to this case and that the State not only had a duty to warn the officials of Juvenile Hall of Randy's propensities to commit violence but also to take reasonable steps to protect plaintiff from Randy. Whether the State breached its duty to plaintiff remains to be determined in subsequent proceedings.

The next issue before this court is whether the State is exempt from liability by virtue of the discretionary function exception to the Tort Claims Act, K.S.A. 1992 Supp. 75-6104(e). The statute provides:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a gov-

ernmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved."

The Kansas Tort Claims Act makes liability the rule and immunity the exception, and the burden is on the State to establish its entitlement to any of the exceptions set forth in K.S.A. 1992 Supp. 75-6104. *Hopkins v. State,* 237 Kan. 601, 609, 702 P.3d 311 (1985). If the State cannot meet this burden, then the general rule of liability set forth in K.S.A. 75-6103 governs. *Allen v. Kansas Dept. of S.R.S.,* 240 Kan. 620, 622, 731 P.2d 314 (1987); *Jackson v. City of Kansas City,* 235 Kan. 278, 286, 680 P.2d 877 (1984).

The State argues that the decision to inform Juvenile Hall of Randy's history was within Sharon Minor's discretion. To support this proposition, the State relies upon excerpts of testimony from Minor's deposition where she states that the Kansas Manual for Youth Services requires SRS to provide a case history on a child under SRS supervision to a facility which undertakes physical custody of the child only upon the facility's request for information. Minor also testified in her deposition that SRS caseworkers were permitted to share information on a child's history with a facility housing the child at the discretion of the caseworker's supervisor. The State asserts that, according to Minor's testimony, the manual allowed her discretion in providing information concerning Randy to Juvenile Hall, and, in exercising her discretion, she chose not to provide any information. The State maintains that as Minor's actions were a discretionary function, the State shall not be liable for damages pursuant to K.S.A. 1992 Supp. 75-6104(e).

The trial court determined that the facts of the case did not give rise to a legal duty and that the State was immune from liability under the discretionary function exception. The Court of Appeals agreed with the trial court. However, it is the position of the plaintiff that because the State's duty to control Randy and to warn others about his dangerous propensities and to protect persons in plaintiff's position is imposed *by law* and is ministerial, not discretionary, the State is not entitled to the protection afforded by the discretionary function exception.

Plaintiff relies upon *Cansler,* and observes that in *Cansler* the Supreme Court summarily rejected the State's claim it was en-

titled to the protection of the discretionary function exception. In *Cansler* we stated:

"An extended discussion is not warranted here, however, since plaintiff's claim is not based upon abuse of discretion, but upon breach of nondiscretionary duty.

". . . The duty to confine and the duty to warn are imposed by law and are ministerial, not discretionary. . . . [Plaintiff's] claim is not based upon *how* the State decided to confine or warn, but upon the State's alleged complete failure to do so. Whether the State exercised reasonable care is an issue of fact.

. . . .

"The discretionary function exemption provides no barrier to plaintiff's claims against either defendant, both of whose acts or omissions were not discretionary, under the alleged facts now before us. The alleged acts or omissions complained of were ministerial, not discretionary." 234 Kan. at 570.

This court discussed the discretionary function exception to the Kansas Tort Claims Act in *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 757 P.2d 272 (1988). In *Dougan*, a landowner and his farm tenants brought an action against the drainage district to recover for damage to croplands and loss of crops due to flooding because of diversion of surface water. The drainage district, as a governmental entity, claimed that although the Tort Claims Act applied, the drainage district was protected by the discretionary function exception. After reviewing several earlier decisions involving the discretionary function provision, this court held:

"Simply stated, our more recent cases hold that the discretionary function exception is not applicable in those situations where a legal duty exists, either by case law or by statute, which the governmental agency is required to follow. The governmental agency cannot properly claim that its challenged action falls within the discretionary function exception where the action taken violated a legal duty." 234 Kan. at 322.

The *Dougan* court recognized that the discretionary function exception is available *only* when no mandatory duty or guidelines exist. The court concluded:

"Based upon the rationale set forth above, we have concluded that the trial court properly held in this case that the discretionary function exception provided for in K.S.A. 75-6104(d) does not apply to relieve the Rossville Drainage District from liability in this case. *This is so because, under the Kansas Tort Claims Act, a governmental agency does not have a discre-*

*tionary right to violate a legal duty and avoid liability. To so hold would completely nullify the purpose of the Kansas Tort Claims Act."* (Emphasis added.) 234 Kan. at 325.

In *Washington v. State,* 17 Kan. App. 2d 518, 521, 839 P.2d 555 (1992), the Court of Appeals discussed briefly the discretionary function exception in a law enforcement or custodial situation. In considering the statutory exception, the court stated:

"This court's review of the district court's conclusions of law is unlimited. *Gillespie,* 250 Kan. at 129. 'The burden is on the governmental entity to establish immunity under one of the exceptions in K.S.A. 75-6104.' *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.,* 249 Kan. 348, 364, 819 P.2d 587 (1991). The most recent Kansas cases dealing with the discretionary function exception hold that it is not applicable in situations where a legal duty exists, either by case law or by statute, which the governmental agency is required to follow. 249 Kan. at 366. *Dougan v. Rossville Drainage Dist.,* 243 Kan. 315, 322, 757 P.2d 272 (1988).

"In its journal entry granting summary judgment, the district court concluded that Kansas statutes provide no standards or guidelines for handling prisoners. The court concluded, in the absence of such standards or guidelines, the State was exempt from liability under the discretionary function exception. Assuming the prison authorities in charge of Vaughn knew or should have known of his intention to harm Washington, they had a duty to exercise reasonable care to control Vaughn to prevent the occurrence of such harm. If the factfinder concludes upon remand that the State's legal duty under Restatement (Second) of Torts § 320 was breached, the State cannot claim immunity from liability under the provisions of 75-6104(e) by asserting the absence of standards or guidelines applicable to the handling of prisoners." 17 Kan. App. 2d at 524-25.

Because the State's duty to control Randy, to warn others about his dangerous propensities, and to protect persons in the position of the plaintiff is imposed by law and is ministerial, not discretionary, the State is not entitled to the protection afforded by the discretionary function exception. SRS cannot rely upon its manual to avoid liability for its acts regarding a duty imposed by law.

The final issue is whether the trial court committed error in granting summary judgment to the State when there were genuine issues of disputed material facts concerning the State's actual and constructive knowledge of Randy's violent and sexually deviant behavior.

Summary judgment is governed by K.S.A. 1992 Supp. 60-256(c), which provides in pertinent part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The standard of review of a decision granting summary judgment is stated in *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 306-07, 756 P.2d 416 (1988):

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.] The party opposing summary judgment, however, has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case."

Certain well-recognized principles have been developed to guide the courts in considering a motion for summary judgment. This court in applying 60-256(c) has recognized that summary judgment is an extreme remedy, which should only be granted where the truth is not left in doubt. *Morris v. Atchison, T. & S. F. Rly. Co.,* 198 Kan. 147, 149, 422 P.2d 920 (1967). Summary judgment is only appropriate where the record conclusively shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990). It is not proper for the court to choose between conflicting possible inferences or to enter summary judgment where the facts presented are subject to conflicting interpretations or where reasonable persons might differ as to their significance. It is only when "reasonable persons could reach but one conclusion from the same evidence that an issue may be decided as one of law." *Williams v. Community Drive-In Theater, Inc.,* 214 Kan. 359, 364, 520 P.2d 1296 (1974).

In considering this appeal, the facts as earlier set forth are stated in the light most favorable to the plaintiff and are assumed to be true. The trial court and the Court of Appeals apparently found that even though there were controverted factual issues, the facts were not necessary to a determination that the State had no liability under the Kansas Tort Claims Act.

On appeal, plaintiff asserts that the State failed to conclusively demonstrate that no genuine issue of material fact remained or that it was entitled to judgment as a matter of law. Plaintiff points out that several facts "which lie at the heart of this matter" are at issue, and notes that in the State's reply to plaintiff's memorandum and suggestions in opposition to the State's motion for summary judgment, the State alleged: "The State controverts Plaintiff's Additional Statement of Uncontroverted Facts 27 and 28 and the various subparagraphs thereunder. *These facts are in issue.* The State denies that it had extensive knowledge of Randy's violent and aggressive behavior." (Emphasis added.)

Plaintiff contends that the facts which the State concedes were at issue are not only material, but are the very facts which give rise to the State's duty in this case.

The State, on the other hand, argues that while there are controverted facts they are not material to a resolution of this matter in that the State owed no duty to the plaintiff. It is the position of the State that the court may determine whether a duty exists as a matter of law without reference to a consideration of the controverted facts. The State concedes that if it had a duty to the plaintiff, then the controverted facts might be pertinent as to whether the State negligently discharged its duty.

The trial court in its ruling acknowledged there were controverted facts but stated "the Court makes no finding as to the facts which Plaintiff controverts or Plaintiff's additional uncontroverted facts." After having so stated, the court apparently found that there was no legal duty on the part of the State under the discretionary function exception to the Tort Claims Act, K.S.A. 1992 Supp. 75-6104(e). The journal entry on the court's rulings then states:

"5. The Court found and held that the Act *as it applies to the uncontested facts in this case,* does not create a legal duty on the part of the State and does present a discretionary function and that the State was within its proper discretion in all of its actions, and the Court need not determine whether it was reasonable or whether there was a causation factor." (Emphasis added.)

Thus, it appears that the court relied upon facts which were uncontroverted and chose to ignore the controverted facts.

On appeal the Kansas Court of Appeals adopted similar reasoning. It held:

"Because K.S.A. 1991 Supp. 75-6104(e) provides the State with immunity from liability, the factual question of whether State employees had knowledge of Randy's inappropriate behavior does not affect the judgment in this case and is immaterial. A finding of immateriality in turn supports the trial court's decision to grant summary judgment."

However, the Court of Appeals in reciting the facts stated, *"Minor did not learn of Randy's placement in Juvenile Hall before the alleged assaults on plaintiff occurred."* (Emphasis added.) The court then goes on to state:

*"By the time Minor learned of Randy's detention, the assaults on plaintiff had already taken place. Given the facts in this case,* it would be inappropriate to find that *Cansler [v. State,* 234 Kan. 554, 675 P.2d 57 (1984)], imposed a duty on Sharon Minor to warn Juvenile Hall about Randy's behavioral problems." (Emphasis added.)

The record is clear that Sharon Minor and SRS had actual knowledge of Randy's placement in Juvenile Hall several days before the second assault on plaintiff and may have had knowledge prior to the first assault. Not only did the Court of Appeals rely upon controverted facts in reaching its decision, it relied upon erroneous statements of facts not supported by the record.

In this case, both the trial court and the Court of Appeals appear to have gotten the cart before the horse, so to speak. As in all negligence cases, the existence of a duty, although a question of law, by necessity turns upon the facts of the case. Whether the State had a duty to control Randy or to warn and protect those endangered by him depends on the State's actual and constructive knowledge of the danger he posed. The State conceded both in the trial court and before the Court of Appeals that facts concerning the State's knowledge of Randy's dangerous propensities were at issue. The district court failed to consider these issues of fact, and held that the facts were not material based on its finding that the State had no duty. The Court of Appeals affirmed the trial court's grant of summary judgment despite disputed issues of fact, finding that the facts were immaterial based on its finding that the State owed no duty to the plaintiff. Having determined that the State had a duty and that the discretionary function exception to the Tort Claims Act does not apply, we conclude that at the very least there are controverted material

facts which remain unresolved and make summary judgment inappropriate.

The judgments of the Court of Appeals and the district court are reversed, and the case is remanded for further proceedings.

DAVIS, J., not participating.

TERRY L. BULLOCK, district judge, assigned.

MCFARLAND, J., concurring: I concur with the majority's conclusion that the entry of summary judgment was premature herein. I disagree with some of the rationale expressed in the majority opinion.

I agree with the Court of Appeals opinion herein distinguishing this case from *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984). In *Cansler* a police officer was injured by felons who had escaped from the Kansas State Penitentiary. Area law enforcement officers had not been advised of the prison escape. Negligence on the part of the State was based upon two grounds—failure to keep the felons confined and failure to warn of their escape.

In the case before us, neither Randy nor C.J.W. were confined in a state institution. Failure to warn of escape is not a factor herein. Randy was in Johnson County Juvenile Hall because he had been arrested and transported by local police for having injured a child with a pool ball. It can hardly be argued that the Johnson County officials accepted physical custody of Randy without knowledge that he was potentially dangerous to other residents of the facility. The majority opinion states in great detail Randy's history of bad behavior. There is nothing therein to indicate any homosexual behavior prior to his involvement with C.J.W.; hence, a full disclosure of SRS records by Sharon Minor, his SRS caseworker, would not have alerted the Johnson County officials to this risk. Randy had previously molested a three-year-old girl. The majority opinion uses this fact to show that SRS was aware of Randy's "sexually deviant behavior." In my opinion,

it is unwarranted to assume that molestation of a 3-year-old girl establishes that he posed a homosexual risk to a 12-year-old boy.

I further disagree with the majority's conclusion that because a court had previously placed Randy in SRS custody, the State was responsible for Randy's conduct. At the time of his attacks upon C.J.W., Randy was in the custody of and under the control of Johnson County. SRS "custody" was of the same nature as that of a parent or guardian in like circumstances.

The majority opinion concludes SRS had a legal duty to warn Johnson County Juvenile Hall of Randy's propensity for violent and sexually deviant behavior. It then holds that discretionary function exception does not apply when breach of a legal duty is asserted. This holding would seem to eliminate the discretionary function exception to the Kansas Tort Claims Act (K.S.A. 1992 Supp. 65-6104[e]), as a tort is a breach of a duty owed by one person to another. See *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86 (1983). There is no claim of tort under the Tort Claims Act unless an assertion is made that a duty owed has been breached.

Unlike *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), there is no manual or set of guidelines requiring the SRS caseworker to disclose information in her files to the Johnson County detention facility. The question then becomes whether to disclose or not disclose is a discretionary act of the caseworker. If it is discretionary, then the discretionary function exception applies. I believe it is premature to make such a determination on the record before us. Expert testimony would be required to establish whether or not there was a nondiscretionary duty to disclose or warn under the circumstances herein. We are, after all, concerned with professional standards of conduct on this issue. Even if this determination is adverse to the State, there is still the jury question of whether the failure to disclose caused or contributed to the attacks upon C.J.W.