IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,937

KEVIN E. REARDON, Special Administrator,
for the Estate of
MARILYN K. PARSONS,
*Appellee*,

v.

JON M. KING,
*Defendant,*
and
THE TRUST COMPANY OF KANSAS,
*Appellant*.

SYLLABUS BY THE COURT

In Kansas, an employer owes a duty of reasonable care under the circumstances to prevent harm to third parties caused by its employees when those employees are acting within the scope of their employment. More particularized articulations of this duty are disapproved.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 17, 2017. Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed November 15, 2019. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is reversed and the case is remanded with directions.

*Rachel N. Wetta*, of Foulston Siefkin LLP, of Wichita, argued the cause, and *Darrell L. Warta*, of the same firm, was with her on the briefs for appellant.

*Michael P. Crow*, of Crow & Associates, of Leavenworth, argued the cause, and *Peter C. Robertson* and *Dan Heinz*, of the same firm, were with him on the brief for appellee.

1

The opinion of the court was delivered by

STEGALL, J.: The Trust Company of Kansas (TCK) employed Jon M. King, a Kansas-licensed attorney, as a trust officer. TCK had a policy prohibiting employees from practicing law during employment. Unbeknownst to TCK, King represented his TCK client—Marilyn K. Parsons—in legal matters before, during, and after his employment with TCK. In his capacity as a trust officer, King would transfer funds from Parsons' TCK account to her personal account to pay a flat rate legal fee of $5,000 per month. Once TCK learned about King's attorney-client relationship with Parsons, TCK filed a complaint of suspected elder abuse with the Kansas Department of Social and Rehabilitation Services and an ethics complaint with the Kansas Disciplinary Administrator's Office.

Further investigation by the Kansas Disciplinary Administrator's Office revealed that Parsons paid King approximately $250,271.50 in attorney fees during his employment at TCK. As a result, King voluntarily surrendered his license to practice law. See *In re King*, 297 Kan. 208, 300 P.3d 643 (2013). Soon after, Parsons filed a lawsuit against TCK and King, asserting various theories of liability. The case went to trial, and a jury found TCK liable for "negligent training" and King liable for breach of fiduciary duty. The Court of Appeals reversed the jury's verdict against TCK, finding the evidence insufficient. Accordingly, the panel remanded the case with instructions to enter judgment as a matter of law in favor of TCK.

On review, we conclude the district court's instructions failed to present the jury with an accurate statement of our negligence law and incorrectly separated Parsons' negligence claim against TCK into two causes of action. As a result of these errors, questions of fact remain. We reverse the Court of Appeals and remand this matter for a new trial decided on proper instructions.

PROCEDURAL BACKGROUND

At this stage of the litigation, the key facts are procedural and they are not in dispute. Parsons sued TCK and King seeking $250,271.50 in damages plus an additional $12,111.99 for loss of income and loss of investment appreciation. After Parsons amended her complaint several times and each party filed multiple pretrial questionnaires, the district court issued a pretrial order describing three separate claims against TCK: "(1) breach of contract, (2) breach of fiduciary duty, and (3) failure to properly supervise its employee, Jon King."

The case proceeded to a four-day jury trial. At the close of Parsons' case-in-chief, TCK moved for judgment as a matter of law on all claims against TCK. After hearing oral argument, the court granted TCK's motion for judgment as a matter of law on part of Parsons' breach of contract claim. The court then summarized Parsons' remaining claims as follows:

> "What I have is—is the—the claims that plaintiff has asserted against TCK that survived is their breach of contract claim, partially, one of their specifications of breach of contract, I've ruled that there's not evidence to support there was a breach.
>
> "[S]o, breach of contract, breach of fiduciary duty, negligent representation, and negligent supervision."

The district court proceeded to finalize its jury instructions and verdict form. The instructions included a claim of "negligent supervision and training" against TCK:

"INSTRUCTION NO. 18

"*Negligent supervision and training claim against Trust Company of Kansas*

"The plaintiff, Marilyn Kay Parsons, claims the defendant, Trust Company of Kansas, failed to adequately supervise and train Jon M. King by the following:

"(1) Failing to train and orient Jon M. King that he was prohibited from practicing law for TCK clients while employed by TCK

"(2) Failing to provide training regarding TCK company policies

"(3) Failing to provide training regarding fiduciary duties to TCK clients

"(4) Failing to verify that Jon M. King did not engage in the private practice of law while employed by TCK

"The plaintiff must prove her claim for negligent supervision and training by a preponderance of the evidence.

"In response to this claim, the defendant, Trust Company of Kansas, denies that it failed to adequately supervise and train Jon M. King. It maintains that plaintiff's losses are not attributable to any failure of training and supervision on its part, but rather to the intentional wrongful acts of Jon M. King, of which it was not aware."

"INSTRUCTION NO. 25

"*Negligent supervision and training*

"In considering the plaintiff's claim against Trust Company of Kansas for negligent supervision and training, you should consider the following:

"1. An employer has a duty to supervise an employee it knows, or has reason to know, is unfit to undertake the responsibilities of his or her employment.

4

"2. Negligent supervision entails either inadequate oversight and review of an employee in the performance of his or her job duties or failing to control an employee with propensities that might pose a danger.

"3. A claim based on negligent training depends upon establishing facts showing that more or better training would have prevented the harm.

"The plaintiff must prove her claim for negligent supervision and training by a preponderance of the evidence."

But the verdict form separated the "claims" of negligent supervision and negligent training into two distinct causes of action:

"*PLAINTIFF'S CLAIMS AGAINST THE DEFENDANT TRUST COMPANY OF KANSAS*

. . . .

"10.     Do you find that plaintiff has proven by a preponderance of the evidence that the defendant Trust Company of Kansas negligently failed to supervise Jon M. King? . . .

"11.     Do you find that plaintiff has proven by a preponderance of the evidence that the defendant Trust Company of Kansas negligently failed to train Jon M. King?"

TCK then questioned the instructions and informed the court that "[t]he claim against us was stated negligent supervision and training claim. There was 'and' it was one claim with both supervision and training." But the court explained the separation was intentional because negligent supervision and negligent training had "different standard[s]." After this explanation, TCK had no further objection.

5

These instructions, along with the verdict form, were given to the jury. In the end, the case submitted to the jury included five claims against TCK: (1) breach of contract; (2) breach of fiduciary duty; (3) negligent misrepresentation; (4) negligent failure to supervise King; and (5) negligent failure to train King.

Ultimately, the jury found TCK liable for negligent training and King liable for breach of fiduciary duties. The jury returned a defendant's verdict on the remainder of Parsons' claims against TCK and King. The jury awarded damages of $125,135.75 plus interest of $6,055.99—half the amount claimed—jointly and severally against TCK and King.

TCK timely filed a renewed motion for judgment as a matter of law, or, in the alternative, a new trial. The district court denied the motion and TCK timely appealed. King did not appeal the jury's finding against him for breach of fiduciary duty, and Parsons did not cross-appeal.

At the Court of Appeals, TCK argued: (1) there was insufficient evidence to support the verdict; (2) the district court should have granted its motion for judgment as a matter of law; and (3) the jury instructions on Parsons' negligence claims were erroneous. *Parsons v. King*, No. 114,937, 2017 WL 1035190, at *1 (Kan. App. 2017) (unpublished opinion). The Court of Appeals reversed and remanded with instructions for the district court to enter judgment as a matter of law in favor of TCK. 2017 WL 1035190, at *5. The panel found the evidence could not support the jury verdict for negligent failure to train even when considering all the facts and inferences that could reasonably be drawn in Parsons' favor. 2017 WL 1035190, at *4. According to the panel, the evidence failed to show more or better training would have prevented Parsons' loss and that it "rather . . . focused on whether TCK adequately supervised King." 2017 WL 1035190, at *4.

6

Parsons filed a petition for review arguing the Court of Appeals erred by finding TCK was entitled to judgment as a matter of law on Parsons' negligence claim. TCK responded to Parsons' petition, asking us to consider the district court's jury instructions on Parsons' negligence claim or claims. We granted Parsons' petition and review TCK's issue raised in its response to provide guidance on remand. See Supreme Court Rule 8.03(c)(3) (2017 Kan. S. Ct. R. 55) ("In a civil case, the response also may present for review adverse rulings or decisions of the district court that should be considered by the Supreme Court in the event of a new trial, provided that the respondent raised the issues in the Court of Appeals."); see also *Puckett v. Mt. Carmel Regional Medical Center*, 290 Kan. 406, 443, 228 P.3d 1048 (2010) (reviewing an issue raised in a response to petition for review under Supreme Court Rule 8.03[c][3]).

ANALYSIS

We take the unusual step of beginning with our conclusion. In short, we agree with both parties. The trial court's jury instructions on Parsons' negligence claim were erroneous. And as a direct result of this error, the Court of Appeals erred in granting judgment as a matter of law in favor of TCK. The instructions and verdict form in this case were so erroneous that an after-the-fact evaluation of the evidence is not possible. The jury instructions did not adequately or accurately explain the elements of Parsons' negligence claim. This prevented the jury from ever being able to consider whether Parsons had sufficiently proven each of the elements of the claim. Given this failure, any review of the evidence for sufficiency became futile and the case must now be returned to the district court for a new trial on proper instructions.

The proper place to begin our analysis is with the jury instructions. When reviewing jury instruction issues, we follow a three step process to determine: (1) whether the issue is reviewable; (2) whether any error occurred; and (3) whether the error requires reversal. *Siruta v. Siruta*, 301 Kan. 757, 771, 348 P.3d 549 (2015).

7

The first and third steps are related because the standard for determining whether an error requires reversal depends on whether the party preserved the issue. 301 Kan. at 771. TCK failed to object to the district court's jury instruction and verdict form with respect to Parsons' claim of negligent supervision and negligent training. When an alleged instruction error was not objected to below we still review whether the instruction was legally and factually appropriate, but will reverse only for "clear error." 301 Kan. at 772 ("'"An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility that the jury would have returned a different verdict."'").

When conducting an error analysis, we must determine whether the instructions were legally and factually appropriate. 301 Kan. at 775. We consider the instructions as a whole and review whether the instructions "'properly and fairly stated the law as applied to the facts of the case and could not have reasonably misled the jury.'" 301 Kan. at 775 (quoting *State v. Horton*, 300 Kan. 477, 491, 331 P.3d 752 [2014]). For an instruction to be legally appropriate, it must fairly and accurately communicate the applicable law to the jury. *Castleberry v. DeBrot*, 308 Kan. 791, 802, 424 P.3d 495 (2018). Thus, determining whether the instructions in this case were legally appropriate require us to review the law applicable to a negligence cause of action.

In its simplest form, a negligence claim requires a plaintiff to prove four essential elements: (1) defendant owed a duty to the plaintiff; (2) defendant breached that duty; (3) plaintiff's injuries were caused by the defendant's breach; and (4) plaintiff suffered damages. *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 622, 413 P.3d 432 (2018).

The first of these elements—the existence of a duty—is actually a question of law rather than one of fact. *Siruta*, 301 Kan. at 766-67. Because the existence of a duty is a question of law, the court must decide whether a duty exists and how to articulate that

8

duty. Dobbs, Hayden & Bublick, The Law of Torts § 164 (2d ed. 2019). Thus, one of the crucial jury instructions in any negligence cause of action must be the trial court's articulation of the duty owed by the defendant to the plaintiff. If this instruction is wrong or misleading, the jury will be incapable of performing its fact-finding role in determining the existence (or lack thereof) of the latter three elements.

Here, Parsons asserted a negligence claim against TCK as an employer. Although this claim involves the conduct of TCK's employee and alleged harm to a third person, the cause of action seeks to impose direct liability on TCK for its allegedly negligent acts causing the harm, not for any negligence or fault on the part of the employee. As a general rule, in the absence of a "special relationship" a defendant does not owe a duty to third parties. *C.J.W. v. State*, 253 Kan. 1, 7-8, 853 P.2d 4 (1993). Kansas common law, however, recognizes a "special relationship" between employers and third parties who come into contact with their employees. See, e.g., *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 362, 819 P.2d 587 (1991). This relationship creates a legal duty owed to the third party by the employer. But how is this duty defined by Kansas law and how should it be explained to a jury?

A review of our caselaw makes it clear that an employer owes a duty of reasonable care under the circumstances to prevent harm to third parties caused by its employees when those employees are acting within the scope of their employment. See, e.g., *Kansas State Bank & Tr. Co.*, 249 Kan. at 362 (explaining that liability results from the employer having "reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor"); *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 590, 682 P.2d 653 (1984) ("an employer has a duty to use reasonable care in the selection and retention of employees"); see also Restatement (Third) of Torts § 41, comment c (2012) ("The duty . . . is to exercise reasonable care under the circumstances.").

9

By defining an employer's duty as one of "reasonable care," we reserve the question of what specific acts constitute "reasonable care" in any of the infinite factual circumstances that could exist to the second element of a negligence claim—breach of the duty. And determining whether a legal duty was breached is a question of fact for the jury.

We acknowledge that there has been a trend in recent years toward defining the legal duty owed in negligence cases in ever narrower and more particularized ways. This can have the deleterious effect of taking the fact question of breach away from the jury "under the guise of deciding the question of 'duty' in its primary sense." Goldberg & Zipursky, *The Restatement (Third) and the Place of Duty in Negligence Law*, 54 Vand. L. Rev. 657, 713 (2001). Particularized duties tend to sneak conclusions about the facts of particular cases into what are intended to be general standards. Dobbs, The Law of Torts § 226 (2000). But duty rules are not meant to be fact specific. Rather, they are to set broadly applicable guidelines for public behavior. Cardi, *Purging Foreseeability*, 58 Vand. L. Rev. 739, 754 (2005). Otherwise, the line between the first and second elements of a negligence claim—duty and breach—are blurred.

Today's case is a good example of that trend. The instructions told the jury below that TCK had specific, discrete duties "to train" and "to supervise." But this misstates Kansas law. Employers in Kansas do not have a duty to third parties to train or to supervise their employees. They have a duty to exercise reasonable care under the circumstances. A failure to either train or to supervise may (or may not) constitute a breach of that duty—just as other specific facts may (or may not) constitute a breach. But these are fact questions properly belonging to the second element of the negligence claim, not the first.

The Supreme Court of Illinois helpfully confronted this unfortunate trend in *Marshall v. Burger King Corporation*, 222 Ill. 2d 422, 856 N.E.2d 1048 (2006). There,

the plaintiff had filed a negligence action against Burger King due to the death of his son. The decedent was killed when a car crashed through the window of the Burger King restaurant where the decedent was eating. Plaintiff alleged that Burger King and Davekiz, Inc.—Burger King's franchisee—were negligent for failing to place safety barriers such as vertical concrete pillars or poles in front of the restaurant. This, they argued, would have prevented Fritz' car from coming through the window and killing the decedent. Defendants moved to dismiss arguing they owed no duty to protect the decedent from the injury caused by Fritz' car. The trial court granted the motion holding there was no duty owed by the defendants to place barriers in front of their restaurant. The court reasoned that, given the likelihood of such an accident happening was minor, recognizing a duty for all restaurant owners to construct such barriers was impractical. *Marshall*, 222 Ill.2d at 427.

Ultimately, the Illinois Supreme Court reversed the trial court. 222 Ill.2d at 425. In doing so, the court observed that by advocating for a particularized statement of duty, Burger King and the other defendants were

> "actually requesting that we determine, as a matter of law, that they did not *breach* their duty of care. It is inadvisable for courts to conflate the concepts of duty and breach in this manner. Courts could, after all, 'state an infinite number of duties if they spoke in highly particular terms,' and while particularized statements of duty may be comprehensible, 'they use the term duty to state conclusions about the facts of particular cases, not as a general standard.' 1 D. Dobbs, Torts § 226, at 577 (2001); see also 54 Vand. L. Rev. at 712-17 (discussing problems associated with using the duty element of negligence to render decisions that no breach occurred as a matter of law). Thus, the issue in this case is not whether defendants had a duty to install protective poles, or a duty to prevent a car from entering the restaurant, or some such other fact-specific formulation. Because of the special relationship between defendants and the decedent, they owed the decedent a duty of reasonable care. The issue is whether, in light of the particular circumstances of this case, defendants breached that duty. That question cannot be answered at this stage of the

11

proceedings. See *Espinoza*, 165 Ill.2d at 114 (issue of breach is for jury to decide provided there is genuine issue of material fact regarding that issue)." 222 Ill.2d at 443-44.

We find this discussion instructive and adopt the same posture toward today's case. Like the trial court in *Marshall*, the trial court here constructed a definition of TCK's duty so fact specific that on review by the Court of Appeals, the line between duty and breach disappeared. In other words, the duty was defined with such particularity that on review, the Court of Appeals determined that there was no evidence of breach.

Instructing the jury on a "duty to supervise" or a "duty to train" is analogous to instructing a jury that Burger King has a duty to install concrete barriers outside its restaurants. Rather than providing the jury with a standard against which it could judge TCK's actions, the instructions described allegations which, if proven, might constitute a breach of TCK's reasonable care duty. The breach element of Parsons' negligence claim concerns the factual question of whether TCK took reasonable steps, in light of the foreseeable probability and magnitude of any harm, to prevent harm. See Restatement (Third) of Torts: Physical & Emotional Harm § 41, comment e (2012). To fulfill its duty of reasonable care to protect Parsons against risks posed by King, TCK did not necessarily have to supervise or train King. A jury might find that, through other actions, TCK did fulfill its duty of reasonable care. Or alternatively, the jury might decide that some act or omission by TCK falling outside the categories of "train" or "supervise" amounted to a breach of its duty of reasonable care. This determination, however, should be left to the jury.

The instructions, combined with the verdict form, likewise erroneously created two negligence causes of action where only one existed. By separating negligent supervision and negligent training into two separate claims the jury was left to assume that an employer owes two separate legal duties to a third party: (1) a duty to supervise

12

its employees and (2) a duty to train its employees. Negligence causes of action, however, are wholly derivative of the duty owed by the defendant. See *Boulanger v. Pol*, 258 Kan. 289, 296-97, 900 P.2d 823 (1995) ("'In Kansas it is a fundamental rule actionable negligence must be based on a breach of duty.'"). And in Kansas, an employer owes third parties a single duty of reasonable care, as we have described.

While an employer's practices when hiring, training, and supervising its employees may be evidence of a breach of an employer's duty of reasonable care to third parties, they are not separate causes of action. Here, TCK only owed Parsons one duty—the duty to exercise reasonable care under the circumstances to prevent Parsons or any other customer from being harmed by its employees. And with only one duty recognized, only one cause of action for breach existed. To the extent our prior caselaw contributed to this confusion by using terms like "negligent supervision" or "negligent training," we make the conscientious decision today to move away from such characterizations of the anatomy of a negligence claim in Kansas.

We have concluded the jury instructions erred:  (1) by failing to properly state the legal duty owed by TCK to Parsons; and (2) by separating Parsons' negligent claim into two separate causes of action. Now we must determine whether these errors were harmless or whether they require reversal. Because TCK failed to object to the instructions at trial, we will reverse only for clear error. *Siruta*, 301 Kan. at 772. "'"An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility that the jury would have returned a different verdict."'" *Siruta*, 301 Kan. at 772 (quoting *Hawkinson v. Bennett*, 265 Kan. 564, 581, 962 P.2d 445 [1998]). In other words, if we are firmly convinced that the legally inappropriate definition of negligence affected the verdict, we must reverse. See *Siruta*, 301 Kan. at 780; *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012).

13

This case is unique in that the effect of the error on the verdict did not become clear until the Court of Appeals reviewed the verdict. After all, Parsons won at trial. But due to the defects in the instructions, the verdict was infirm on appeal. In fact, the verdict was flawed at the outset because the jury found TCK liable for breaching a duty that does not exist.

Had the jury been properly instructed, any jury verdict in favor of Parsons on her negligence claim would likely have survived a sufficiency challenge. It was only because the jury was factually cramped by the erroneous instructions that the Court of Appeals was able to reach its conclusion of insufficient evidence. We do not know whether a properly instructed jury would return a verdict in favor of Parsons. But we are firmly convinced that the legal errors we have identified with the instructions did affect the verdict. Therefore, we must reverse and remand for a new trial on legally appropriate instructions.

Reversed and remanded with directions.

BEIER and JOHNSON, JJ., not participating.[1]
DAVID WILLIAM ROGERS, District Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** Justice Johnson heard oral arguments but did not participate in the final decision in case No. 114,937. Justice Johnson retired effective September 6, 2019.

[2]**REPORTER'S NOTE:** District Judge Rogers was appointed to hear case No. 114,937 vice Justice Beier under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.